IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

FILED
IN OPEN COURT

MAY 28 2025

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | No. 1:25-cr-116 (CMH) |
| DAMASO LOPEZ-SERRANO, | |
| Defendant. | |

## STATEMENT OF FACTS

The United States and the defendant, DAMASO LOPEZ-SERRANO, agree that the following facts are true and correct, and that had this matter proceeded to trial, the United States would have proven the following facts beyond a reasonable doubt with admissible and credible evidence:

1. On or about December 12, 2024, in the Eastern District of Virginia and elsewhere, the defendant did knowingly and intentionally attempt to possess with the intent to distribute 40 grams or more of a mixture or substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide, known as fentanyl, a Schedule II controlled substance, in violation of Title 21 United States Code Sections 841(a)(1).

2. On January 10, 2018, the defendant pled guilty to counts one and two of an indictment filed in the Southern District of California. *United States v. Damaso Lopez-Serrano*, Case No. 16-cr-01896-DMS-1. On that same date, the defendant pled guilty to the indictment filed in the Eastern District of Virginia and transferred to the Southern District of California. *United States v. Damaso Lopez-Serrano*, Case No. 17-cr-03687-DMS. He was sentenced on both cases to time-served on September 16, 2022, and placed on five years of supervised release.

3. In April 2024, the defendant moved from the Southern District of California to the Eastern District of Virginia. His supervision was transferred to the United States Probation Office for the Eastern District of Virginia.

4. In or about September 2024, the defendant discussed the importation of fentanyl from Mexico to Southern California with an individual who, unknown to the defendant, was providing information to the FB as a confidential source (CS). The defendant communicated with the CS from the Eastern District of Virginia using an encrypted cellphone application, and the CS recorded some of these communications. During these conversations, the defendant told the CS that he had people in Southern California who could distribute fentanyl. They also discussed how much it would cost to get fentanyl from Mexico into California, the profit that could be made, and how the defendant could finance the transactions through the sale of family properties in Mexico.

5. On or about December 4, 2024, the CS told the defendant that he could have four kilograms of fentanyl available for delivery to the defendant's people in Los Angeles, CA, the following week.

6. On or about December 10, 2024, the CS asked the defendant for a telephone number for the person who would take delivery of the fentanyl in Los Angeles. The defendant provided the CS with a phone number (the "6679" number).

7. Unknown to the defendant, the FBI had intercepted the fentanyl the defendant was going to purchase. It consisted of three one-kilogram packages, which field tested positive for fentanyl. A subsequent laboratory analysis, however, proved that the packages contained a sham substance made to look like powdered fentanyl.

8. The FBI used a cooperating witness (CW) to pose as the person who would be delivering the kilogram packages of fentanyl to the defendant's Los Angeles person at phone

number 6679. On December 10, 2024, the CW called that number, but the person who answered claimed to know nothing about any such transaction. At the direction of the FBI, the CS contacted the defendant and told him what had happened. The defendant assured the CS that the defendant would have someone pick-up the drugs.

9. On December 11, 2024, a person using the 6679 number contacted the CW, and he arranged to meet the CW the following day.

10. On December 12, 2024, the person using the 6679 number called the CW. He told the CW that he had a medical appointment and had to postpone their scheduled meeting. That information was given to the CS, and, at the direction of the FBI, the CS informed the defendant what had happened. The defendant said he would contact his people. Shortly thereafter, the defendant contacted the CS and told him that as soon as his person gets out of the clinic, that person will call the CW. About ten minutes later, the defendant's person, using the 6679 number, contacted the CW, and they arranged to meet at 5:00 p.m. A few minutes later, the defendant contacted the CS, informing the CS that his person in Los Angeles had contacted the CW.

11. On December 12, 2024, at about 5:30 p.m., the person using the 6679 number arrived at the pre-arranged location to meet the CW. The CW was waiting for him in a car with the three packages of sham fentanyl. The person got into the car with the CW and inspected the packages containing the sham fentanyl, at which point he was arrested.

Respectfully submitted,

Erik Seibert
United States Attorney

Date: May 28, 2025

By: /s/ James L. Trump
James L. Trump
Assistant United States Attorneys

After consulting with my attorney and pursuant to the plea agreement entered into this day between the defendant, DAMASO LOPEZ-SERRANO, and the United States, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

5/28/2025                                  _____
                                           DAMASO LOPEZ-SERRANO

I am Matthew Lombard, the defendant's attorney. I have carefully reviewed the above Statement of Facts with him. To my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

5/28/2025                                  _____
                                           Matthew Lombard
                                           Edward Ungvarsky
                                           Attorneys for Damaso Lopez-Serrano